IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

TIMOTHY STROZIER,

    Plaintiff,

v.                                                    CASE NO. 1:21-cv-155-MW-GRJ

WALMART, INC. and
APEX MEDICAL CORP.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Defendant Apex Medical Corporation's ("Apex") Motion to Dismiss, ECF No. 37, in this state-law products liability action brought under 28 U.S.C. § 1332. ECF No. 5. In the motion, Apex argues that the claims against it must be dismissed for lack of personal jurisdiction.[1] The Court agrees. Accordingly, Apex's motion to dismiss should be granted for failure to plead sufficient facts to establish personal jurisdiction. The *pro se* Plaintiff, however, should be allowed to amend his

---

[1] Apex also argues that it is entitled to dismissal because Plaintiff failed to state a claim upon which relief may be granted, and for lack of subject matter jurisdiction. ECF No. 37 at 9-17. The Court has already determined that it has diversity jurisdiction over this case, ECF No. 47, and the undersigned has recently recommended that Walmart's Motion to Dismiss for failure to state a claim be denied as Florida law recognizes both strict liability and negligence claims arising from a manufacturing defect that caused physical injury. Report and Recommendation, ECF No. 52 at 4. For these reasons, the Court denies Apex's Motion to Dismiss on the additional grounds.

Complaint to allege facts to establish personal jurisdiction, if he is able to do so.

## I.  BACKGROUND

*Pro se* Plaintiff, Timothy Strozier ("Strozier"), commenced this action by suing Walmart and Apex for injuries suffered from Strozier's use of a pair of crutches manufactured by Apex then sold to him by Walmart.  ECF No. 5.  Taking Strozier's allegations are true, Apex is a company based in Taipei City, Taiwan.  *Id*. at 3.  In response to Apex's Motion to Dismiss for lack of personal jurisdiction, Strozier argues that he is entitled to sue Apex in the Northern District of Florida because Apex manufactured the crutches that caused his injuries, which injuries occurred in Florida.  ECF No. 41 at 3.  Strozier further contends that he may bring claims against Apex "under the doctrine of Joint venturers"[2] alleging that Apex is liable for Walmart's tortious conduct.  *Id*. at 4.  For relief, Strozier seeks $96,000 from Apex for "constant pain" that he has endured "for over 1,458 days."  ECF No. 5 at 7.

---

[2] The law of joint venture liability does not apply to this products liability case. *See Kislak v. Kreedian,* 95 So.2d 510 (Fla. 1957).  "In addition to the essentials of an ordinary contract, in contracts creating joint ventures there must be (1) a community of interest in the performance of the common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits and (5) a duty to share in any losses which may be sustained." *Id.* at 515.

2

For the following reasons the Court concludes that none of Strozier's allegations or arguments are sufficient to establish that this Court has personal jurisdiction over Apex.

## II.  STANDARD OF REVIEW

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the Court accepts as true all allegations in the complaint to determine whether the plaintiff has met his burden of establishing a *prima facie* case of personal jurisdiction. *See Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino,* 447 F.3d 1357, 1360 (11th Cir. 2006). "A *prima facie* case is established if the plaintiff puts forth enough evidence to withstand a motion for a directed verdict." *Id.* (quotation marks and citation omitted). The Court engages in a two-part analysis to determine if it may exercise jurisdiction over a non-resident defendant. *See Louis Vuitton Malletier, S.A. v. Mosseri,* 736 F.3d 1339, 1350 (11th Cir. 2013) (*citing Mut. Serv. Ins. Co. v. Frit Indus., Inc.,* 358 F.3d 1312, 1319 (11th Cir. 2004)); *Virgin Health Corp. v. Virgin Enters. Ltd.,* 393 F. App'x 623, 626 (11th Cir. 2010) (per curiam); *Cable/Home Commc'n Corp. v. Network Prods., Inc.,* 902 F.2d 829, 855 (11th Cir. 1990) (citations omitted).

First, the Court determines whether the defendant's activities satisfy Florida's long-arm statute. *See Louis Vuitton,* 736 F.3d at 1350. Second,

the Court determines whether the exercise of personal jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Id.*

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The Court's consideration is limited to the allegations presented. *See GSW, Inc. v. Long Cty.,* 999 F.2d 1508, 1510 (11th Cir. 1993). All factual allegations are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention,* 623 F.3d 1371, 1379 (11th Cir. 2010); *see also Roberts v. Fla. Power & Light Co.,* 146 F.3d 1305, 1307 (11th Cir. 1998). Nevertheless, while a plaintiff need not provide "detailed factual allegations," the allegations must consist of more than "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (internal citations and quotations omitted). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal.'" *Davila v. Delta Air Lines, Inc.,* 326 F.3d 1183, 1185 (11th Cir. 2003). The "[f]actual

4

allegations must be enough to raise a right of relief above the speculative level." *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir. 2007) (quoting *Twombly,* 550 U.S. at 545, 127 S.Ct. 1955).

A *pro se* litigant's allegations are entitled to the benefit of liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam). However, a court does not have "license ... to rewrite an otherwise deficient pleading [by a pro se litigant] in order to sustain an action." *GJR Investments v. Cty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir.1998), overruled on other grounds by *Iqbal*. A complaint still "must provide a defendant with 'fair notice of what the plaintiff's claim is and the grounds upon which it rests'" lest a "plaintiff with a largely groundless claim" be allowed to "take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the [discovery] process will reveal relevant evidence.'" *Dura Pharm., Inc. v. Broudo,* 544 U.S. 336, 346 (2005) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) and *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975) (alteration in original)).

## III.  DISCUSSION

Strozier alleges that he purchased crutches manufactured by Apex from Walmart, and that a defect in the crutches caused him physical injury in Florida.  ECF No. 5.  Although these allegations may be sufficient to establish specific personal jurisdiction under Florida's long-arm statute they fall well short have satisfying the requirements of Due Process under the Fourteenth Amendment.

### A.  Florida's long-arm statute is satisfied.

Pursuant to the long-arm statute, Florida courts can exercise personal jurisdiction over an out-of-state defendant in two ways. First, Florida courts can exercise general personal jurisdiction over any claims against a defendant—whether or not they involve the defendant's activities in Florida—if the defendant engages in "substantial and not isolated activity in Florida." *Carmouche v. Tamborlee Mgmt., Inc.,* 789 F.3d 1201, 1204 (11th Cir. 2015) (*citing* Florida's long-arm statute). "A foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Id.* at 1205. Thus, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id.* at

1204 (quoting *Daimler AG v. Bauman,* 571 U.S. 117, 134 S.Ct. 746, 760, 187 L.Ed.2d 624 (2014)).

Second, Florida courts can exercise specific personal jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida if those contacts fall within one of nine statutorily enumerated categories under Florida's long-arm statute. *Id.*

Strozier's Complaint fails to allege facts that establish a *prima facie* case of general personal jurisdiction over Apex. That is because Strozier has not alleged any connections between Apex and Florida. Indeed, the only jurisdictionally relevant allegations about Apex are that it is a Taiwanese company with its principal place of business in Taipei City. ECF No. 5 at 3.  Thus, the Complaint fails to allege facts sufficient to establish general personal jurisdiction over Apex.

The allegations in Strozier's Complaint, however, are sufficient to allege specific personal jurisdiction under Florida's long-arm statute. Under Florida's long-arm statute, a non-resident defendant can be sued for causing injury to persons within Florida arising out of an act or omission by the defendant outside of Florida, if, at or about at the time of the injury, the product manufactured by the defendant anywhere was used or consumed within Florida in the ordinary course of commerce, trade, or use.  Fla. Stat.

§ 48.193(1)(a)(6).  Here, Strozier sufficiently alleges that he suffered a personal injury in Florida caused by alleged defective crutches he purchased in Florida that were manufactured by Apex. Accordingly, Strozier has plead sufficient facts to establish specific personal jurisdiction over Apex under Florida's long-arm statute.

The inquiry, of course, does not end there. Strozier also must plead sufficient facts to satisfy the Due Process clause. This is where Strozier's complaint falls short.

### B. Due process is not satisfied.

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).  To determine whether exercising specific jurisdiction comports with due process, a court applies a three-part test. *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1313 (11th Cir. 2018). First, the court asks "whether the plaintiff[] ha[s] established that the[] claims arise out of or relate to at least one of the defendant's contacts with the forum." *Id.* (internal quotation marks omitted). Second, the court asks

"whether the plaintiff[] ha[s] demonstrated that the defendant purposefully availed itself of the privilege of conducting activities within the forum state." *Id*. (internal quotation marks omitted). If the plaintiff shows the first two prongs, the court asks whether the defendant makes a "compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted).

For the first prong, the court considers the "affiliation between the forum and the underlying controversy, focusing on any activity or occurrence that took place in the forum State." *Id.* at 1314 (internal quotation marks and alterations omitted). A tort arises out of or relates to at least one of the defendant's contacts with the forum if the contact is a "but-for" cause of the tort. *Id.* (citation omitted). The failure to satisfy the first prong is "fatal" to the court's exercise of specific jurisdiction. *Id.* at 1315.

For the second prong, in an action accusing a foreign manufacturer of placing a defective product into the stream of commerce, circuits are split on whether to apply a "stream of commerce" test or a "stream of commerce plus test." *Amtrust N.A. v. Sennebogen Machinenfabrik GMBH,* No. 3:19-cv-1004-J-34PDB, 2020 WL 5441407, at *14 (M.D. Fla. Aug. 25, 2020)

9

(*citing Knepfle v. J-Tech Corp.*, 419 F. Supp. 3d 1281, 1288 (M.D. Fla. 2019)).[3]

The Eleventh Circuit has not addressed which test to use. *Id.* at *14-15 (citation omitted). Under the stream-of-commerce test, a court may exercise jurisdiction over the defendant "even if it did not design or control the system of distribution that carried its product into the forum so long as it was aware of the distribution system's operation and it knew that it would benefit economically from the sale in the forum of its products." *Amtrust,* 2020 WL 5441407, at *14. Circuits that apply the test consider foreseeability and other factors that include "the level of control the defendant has in the distribution chain and whether the defendant intended to access the benefits of the forum's marketplace. *Id*.

The stream-of-commerce-plus test "more robustly protects the interests of nonresident defendants." *Id.* Under that test, to be subject to jurisdiction, "a defendant must take action purposefully directed toward the forum." *Id.*

---

[3] The circuit split follows plurality opinions in *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), and *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011). *Amtrust,* 2020 WL 5441407, at *14.

For the third prong, a court considers factors pertinent to whether exercising jurisdiction over a non-resident defendant would offend traditional notions of fair play and substantial justice, *id*. at *15, including: "the burden on the defendant"; "the forum's interest in adjudicating the dispute"; "the plaintiff's interest in obtaining convenient and effective relief"; and "the judicial system's interest in resolving the dispute." *Louis Vuitton,* 736 F.3d at 1358 (citation omitted).

The Supreme Court significantly narrowed the constitutional test for a state court's exercise of specific personal jurisdiction over a non-resident defendant in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S.Ct. 1773, 1780, 198 L.Ed.2d 395 (2017). In that case, the Court held that "[i]n order for a state court to exercise personal jurisdiction, the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Id*. (emphasis in original and alterations adopted). In other words, a state court cannot exercise specific personal jurisdiction over a foreign defendant in the absence of an "affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that took place in the forum State." *Id*. at 1781 (citation omitted). "When there is no such connection, specific jurisdiction is lacking regardless of a defendant's unconnected activities in the State." *Id*. (citation omitted).

11

The Eleventh Circuit has applied *Bristol-Myers* in a products liability case, affirming the district court's dismissal of the case for lack of personal jurisdiction. *See Hinkle v. Cirrus Design Group*, 775 F. App'x 545 (11th Cir. 2019). In that case, the plaintiff sued the manufacturer of an alleged defective aircraft that took off from Florida and crashed in South Carolina, injuring the plaintiff and his family members. Relevant here, the Court of Appeals found that the Defendant's activities in Florida did not rise to the level required for establishing specific personal jurisdiction under *Bristol-Meyers*.

> [A]lthough [Plaintiff] lived in Florida when he purchased the aircraft, he did not purchase the aircraft through [Defendant's] Florida sales representative; he went through a Virginia representative. [Plaintiff] did not attend the Defendant's trade show in Florida. While [Plaintiff] purchased the aircraft through his Florida LLC, and the sales contract lists the buyer as this LLC and provides a Florida address, the aircraft was delivered in Minnesota. None of this is sufficient to say that any of the [Plaintiff's] causes of action arose out of [Defendant's] business conduct in Florida.

*Hinkle,* 775 F. App'x at 549. The Court reasoned that the plaintiff's claims for negligence did not allege that the defendant's business activity in Florida was related to the alleged negligence that caused the plane crash. *Id*.

> [Plainitff's] harm may have arisen from [Defendant] activity outside of Florida that was like some of Defendant's activities in Florida—Defendant sells, promotes, and services its aircraft in

12

> Florida, and the [plaintiffs] were allegedly harmed by a Defendant aircraft—but that cannot be enough.
>
> To hold that such a "relation" is sufficient for specific jurisdiction would effectively raise from the dead the "sliding scale" approach to specific jurisdiction rejected by the Supreme Court in [*Bristol-Myers*].

*Id*. at 550.

This action concerns an alleged defective product that was made in Taiwan, purchased in Florida, used in Florida, and that caused injury in Florida to a citizen of Florida. Notwithstanding, Strozier's connections to Florida, Strozier alleges nothing about Apex's activities in Florida. Under *Bristol-Meyers* then, this Court lacks specific personal jurisdiction over Apex because the Complaint is devoid of any allegations that Apex's activities in Florida were the but-for cause of his injuries. Even though this is an independent reason why Strozier's complaint fails to allege sufficient facts to establish personal jurisdiction and satisfy Due Process there are other constitutional defects in the Complaint, which fail to establish personal jurisdiction.

### 2. Purposeful Availment.

Strozier also failed to allege any facts to establish that Apex "purposefully availed" itself of the privileges of doing business in Florida. To lawfully exercise specific personal jurisdiction over a nonresident

13

defendant, the defendant must have purposefully availed itself of the forum State. *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (citation omitted).

While Apex allegedly availed itself of Florida's marketplace by placing its crutches into the stream of commerce, the Plaintiff must still satisfy one of the stream of commerce tests.

In *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 296-98, 100 S.Ct. 559, 62 L.Ed.2d 92 (1980) the Supreme Court recognized that Due Process is satisfied where the manufacturer "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id*. at 297-98, 100 S.Ct. 559 (citation omitted).

The Supreme Court, however, has not enunciated the test for trial courts to apply when analyzing personal jurisdiction based upon stream of commerce, and the Eleventh Circuit has not adopted either the stream-of-commerce test or stream-of-commerce-plus test. The Court, therefore, will consider both tests.

*i. Stream-of-Commerce test is not satisfied.*

Under the "stream of commerce test," a forum may exercise personal jurisdiction over a foreign defendant so long as the defendant "was aware

of the distribution system's operation and it knew that it would benefit economically from the sale in the forum of [its] products." *Asahi,* 480 U.S. at 121, 107 S.Ct. 1026 (Brennan, J., concurring). Circuits that apply the "stream of commerce test" look to foreseeability and additional factors such as the level of control the defendant has in the distribution chain, and whether the defendant intended to access the benefits of the forum's marketplace. *Amtrust,* 2020 WL 5441407, at *14 (citation omitted).

In this case, Strozier does not allege that Apex was aware of the operation of Walmart's distribution system or even that Apex knew or reasonably should have known that it would benefit economically from the sale of its crutches in Florida. Thus, there are no allegations in the Complaint to establish that Apex reasonably could foresee that its crutches would end up in Florida. Accordingly, the stream-of-commerce test is not satisfied.

*ii. Stream-of-Commerce-Plus test is not satisfied.*

Under the stream-of-commerce-plus test, a defendant must take action "purposefully directed toward the forum State" to be subject to personal jurisdiction. *Asahi,* 480 U.S. at 112, 107 S.Ct. 1026 (citation and internal quotation marks omitted).

15

In this case, Strozier simply alleges that Apex manufactured the crutches, and that Walmart sold them to Strozier in Florida. Those allegations are woefully insufficient to establish that Apex took any action purposefully directed toward Florida. Notably, Strozier does not even allege that Apex advertised its crutches for sale in Florida or for that matter anything other than that Walmart bought the crutches from Apex and then sold them in Florida. As a result, Strozier's allegations are insufficient to establish that Apex has purposefully availed itself of this forum.

*3. Fair Play and Substantial Justice*.

Finally, if Strozier is able to cure the due process defects discussed above, suing Apex in Florida "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (citations and internal quotation marks omitted). In this part of the analysis, a court must consider factors including, but not limited to:

(1) the burden on the defendant;

(2) the forum's interest in adjudicating the dispute;

(3) the plaintiff's interest in obtaining convenient and effective relief; and

(4) the judicial system's interest in resolving the dispute.

*Louis Vuitton*, 736 F.3d at 1358 (citation omitted).  If Apex has sufficient activities in Florida to satisfy the first two prongs discussed above, the burden on Apex to litigate in Florida may still be high.  Nevertheless, Florida would have a substantial interest in a defective product claim for a medical device that was allegedly sold, purchased, and used in Florida, causing injury to a Florida resident. Florida has a substantial interest in consumer protection and public safety, and that interest is only heightened in the context of defective medical equipment. Further, Florida naturally has an interest in resolving litigation where the vast majority of relevant facts point to Florida.

Moreover, the judicial system has a substantial interest in resolving this case because a failure to do so would render Apex effectively "judgment proof." *See Burger King*, 471 U.S. at 486, 105 S.Ct. 2174 (*citing McGee v. Int'l Life. Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)). If Florida cannot render a judgment on these facts, Strozier would have to bring suit in Taiwan.  Such an outcome would essentially insulate Apex from being subject to suit and redress for injuries caused by its alleged defective product.

Finally, dismissing Apex could leave Strozier with no ability to recover at all. While Walmart may be subject to strict liability, Florida law apportions

17

damages in products liability actions under a theory of comparative fault. *See* Fla. Stat. § 768.81(3)(b). Under comparative fault apportionment, even if Walmart were strictly liable, it may have had nothing to do with the alleged design defect nor had any means to detect the defect through reasonable inspection. *See Evanston Ins. Co. v. Dimeda Instrumente GMBH*, No. 16-80467-CIV-DIMITROULEAS, 2016 WL 10953759, at *2 (S.D. Fla. Jul. 5, 2016) (stating that "the mere selling of a defective product by a retailer does not constitute fault" under Florida law) (citation omitted and alterations adopted); *Cataldo v. Lazy Days R.V. Ctr., Inc.*, 920 So.2d 174, 178 (Fla. 2d DCA 2006) (stating that the Florida Supreme Court has "observed that the doctrine of strict liability does not operate to make the manufacturer or seller an insurer" of the product) (citation omitted); *see also Masker v. Smith*, 405 So.2d 432 (Fla. 5th DCA) (holding that there is no "liability on the seller of used goods for latent defects for which he is not responsible and which he could not discovery by the exercise of reasonable care[.]").

Under such circumstances, leaving Apex – the manufacturer and source of the alleged defect – out of the case could result in Strozier being completely unable to recover compensation for his alleged injuries.

As a result, after carefully reviewing the fairness factors in the context of the facts presented here, the fairness factors do not weigh in favor of dismissing Apex on personal jurisdiction grounds. For this reason, the undersigned recommends allowing Strozier to amend his complaint to cure the due process issues addressed in this report, if he is able to do so.

## IV.  CONCLUSION

Accordingly, it is respectfully **RECOMMENDED** that Defendant Apex's Motion to Dismiss for lack of personal jurisdiction, ECF No. 37, should be **GRANTED**.  It is further **RECOMMENDED** that Plaintiff should be granted leave to amend his complaint to cure the defects relating to personal jurisdiction if Plaintiff is able to allege that Apex's activities in Florida are related to his underlying tort claim and that Apex purposefully availed itself of the privileges of selling its products in Florida.

**IN CHAMBERS** at Gainesville, Florida this 25th day of August 2022.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A**

19

copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.